**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ESTATE OF ELEANOR E. WILDHABER, *et al.*, ) <br>                                                                    ) <br>                                    Plaintiffs, ) <br>                                                                    ) <br> vs.                                                             ) <br>                                                                    ) <br> LIFE CARE CENTERS OF AMERICA, INC., ) <br>                                                                    ) <br>                                    Defendant. ) <br> _____) | Case No. 2:10-cv-00015-RLH-PAL <br><br> **ORDER** <br><br> (Mot to Stay Proceedings and Compel) <br> (Arbitration - Dkt. #16) |

The court conducted a hearing on Defendant's, Life Care Centers of America, Inc. (d.b.a. Life Care Center of Las Vegas), Motion to Stay Proceedings and Compel Arbitration (Dkt. #16) on July 13, 2010. Jessica Manansala appeared telephonically on behalf of the Defendant and Robert Murdoch appeared in person on behalf of the Plaintiffs. The court has considered the motion, Plaintiffs' opposition (Dkt. #23), Defendant's reply (Dkt. #26) and the arguments of counsel at the hearing.

**BACKGROUND**

The Complaint in this case was filed in state court and removed (Dkt. #1) on January 7, 2010. It involves a wrongful death and negligence action arising out of the treatment, care and death of decedent Eleanor Wildhaber. The decedent was admitted to Defendant Life Care Center of Las Vegas ("Life Care") December 12, 2008 for treatment after suffering a stroke in November 2008 and remained there until her admission to MountainView Hospital on December 29, 2008. Plaintiffs allege that she died on December 30, 2008 at MountainView Hospital as a result of injuries and damages she suffered because of the negligence of Life Care. The Plaintiffs have also asserted claims for abuse and neglect, and battery.

In the current motion, Defendant Life Care seeks to stay this case and compel the parties to arbitrate pursuant to a voluntary agreement for arbitration executed by the decedent, Eleanor Wildhaber,

and Defendant Life Care. A copy of the agreement for arbitration is attached as Exhibit "A" to the motion. Defendant asserts that arbitration is compelled by the provisions of Nevada Revised Statute § 38.221, and that the terms of the agreement require arbitration of Plaintiffs' individual claims, as well as the claims of the Estate of Eleanor Wildhaber.

Plaintiffs oppose the motion asserting the agreement to arbitrate is invalid and "fails for incompetency, unconscionability, lack of consideration, and illegality." Plaintiffs also assert that the arbitration agreement cannot compel a non-signatory heir to arbitrate the wrongful death claim. Plaintiffs claim that the decedent lacked contractual capacity when she was asked to sign the arbitration agreement along with eleven other different forms, documents and agreements. Plaintiffs state that in early December 2008, the decedent was admitted to MountainView Hospital for acute respiratory distress, COPD exacerbation and congestive heart failure. She was taking a variety of medications including Hydrocodone for pain, and Trazodone–a sedative. On the last day of her stay at MountainView before her transfer to Life Care, a representative of Life Care visited her in her hospital room and had her sign eleven different forms, documents or agreements. The deposition of Nurse Summers, one of the Registered Nurses at Life Care has been taken. Ms. Summers testified at her deposition that on December 14, 2008, the decedent was "mildly confused to time and place" and that in the nurse's opinion "she could not sign a legal document."

Plaintiffs also argue that the arbitration agreement was separate and distinct from the other admission documents the decedent signed on December 11, 2008, and that it is unenforceable for lack of consideration. The arbitration agreement states that the consideration is the "benefits and use of arbitration in the efficient resolution of conflicts" which is insufficient as a matter of law. Plaintiffs also argue that the arbitration agreement is illegal under federal and state Medicare and Medicaid regulations which prohibit the inclusion of an arbitration clause in an admission agreement. Specifically, Plaintiffs rely on 42 U.S.C. § 1396(r)(c)(5) which prohibits a nursing facility participating in a Medicare/Medicaid program from charging, soliciting or receiving any gift, money, donation or other consideration other than that required to be paid under a state plan as a precondition of admitting an individual to the facility, expediting admission to the facility, or as a requirement for the individual's continued stay. Plaintiffs anticipate that the Defendant will argue that, because the arbitration

agreement was a separate agreement, and since it states it is a voluntary agreement, that Defendant will argue signing the form was not a precondition of admission.  However, Plaintiffs claim discovery is needed concerning how Defendant's representative obtained the decedent's signature on the various forms that she signed.

Plaintiffs also argue the arbitration agreement is both substantively and procedurally unconscionable, and therefore, unenforceable.  Plaintiffs assert that the arbitration agreement is procedurally unconscionable because it was signed when the decedent was in a fragile condition, suffering the effects of a stroke, taking medication and on oxygen.  Plaintiffs contend the agreement is substantively unconscionable because it is one-sided because the decedent was receiving Medicare benefits, and Life Care would not or could not sue the decedent for non-payment.  Thus, Life Care did not give up anything by having the Plaintiff waive her right to jury trial.

The arbitration agreement requires AAA Arbitration, which Plaintiffs argue is expensive. Plaintiffs also contend that AAA itself is biased.  Plaintiffs' counsel has offered to agree to binding arbitration outside of AAA.  However, Life Care would not agree.  Plaintiffs seek a wrongful death recovery between $1,000,000 and $5,000,000.  The AAA Arbitration's fee schedule for a claim in this amount would be $8,200.  Plaintiffs also claim that AAA has disclosed its 2009 Annual Report that it has its own advisory council on health care, which represents insurance companies, in-house counsel, health care attorneys, and major organizations within the health care industry such as the American Medical Association, American Hospital Association, and Medical Group Management Association. Plaintiffs claim that the existence of this advisory council creates a clear conflict of interest, or at a minimum, an appearance of impropriety such that allowing AAA Arbitration would deprive the decedent of her due process rights and equal protection rights under the Nevada and United States Constitutions.

Finally, Plaintiffs claim that even if the Estate's claim is arbitrable, the wrongful death claim of the heir is not.  The heir did not sign the arbitration agreement, and under Nevada Law, the injured parties' claim after death is an asset of the Estate, but under NRS 41.085, the wrongful death claim is an action for the benefit of designated persons who have suffered a loss of a loved one.  Thus, non-signatory heirs should not be bound by an arbitration agreement signed by the decedent.  The Plaintiffs

rely on a Missouri state court decision denying arbitration of wrongful death claims that are not derived from the decedent's claim. Plaintiffs claim that Missouri's wrongful death claim is identical to Nevada's, because in Nevada the wrongful death claim does not belong to the deceased or the decedent's estate, citing *Alfenz v. Clark County School District*, 109 Nev. 1062, 864 P.2d 285 (1993).

      Defendant replies that the decedent voluntarily filled out and signed the voluntary agreement for arbitration, which binds not only herself but her heirs to arbitrate any disputes arising out of her care and treatment at Life Care. Defendant claims that on December 12, 2008, when the decedent was admitted to Life Care, an initial assessment was completed which concluded she was alert and oriented. A copy of the initial data collection tools/nursing service form is attached as Exhibit "A" to the reply. Defendant concedes that Ms. Wildhaber completed her admissions paperwork, including the arbitration agreement, on December 11, 2008. However, Defendant argues there is no evidence that she was not competent the day before when she signed the arbitration agreement. A second assessment was done on December 19, 2008. A copy of the social assessment for abuse/neglect form is attached as Exhibit "B" to the motion. Defendant acknowledges that on May 25, 2010, Elsie Summers, R.N. was deposed and testified that Ms. Wildhaber was mildly confused as to time and place. However, she also testified that Ms. Wildhaber was alert, looked around, was active, and that her brain was functioning. Thus, Defendant claims there is sufficient evidence that Ms. Wildhaber had the capacity to enter into the arbitration agreement.

      Defendant also argues the arbitration agreement was a voluntary agreement, and that Nevada recognizes a strong public policy favoring arbitration. Under Nevada Law, both procedural and substantive unconscionability must be established in order for a court to exercise its discretion to refuse to enforce an arbitration clause as unconscionable. Defendant claims that this agreement is not procedurally unconscionable because it was a separate form filled out by the decedent which advised in bold, italics and capitalized letters that it should be read carefully, and clearly advised the signator that by signing the agreement, the right to a jury or court trial would be waived. Defendant also disputes that the arbitration agreement is substantively unconscionable as one-sided. Defendant contends the agreement is two-sided because it is also binding on the Defendant. Finally, Defendant contends that all of the Plaintiffs' claims in this case are covered by the arbitration agreement and binding on the heirs

or other non-signatories. Defendant concedes that the Nevada Supreme Court has not addressed this issue directly, but argues California courts have routinely held that arbitration agreements bind non-signatory heirs in cases arising out of medical care and treatment. Because all of the Plaintiffs' claims arise out of the care and treatment of the decedent, and the arbitration agreement covers all such claims, Plaintiffs must arbitrate.

## **DISCUSSION**

Both sides rely upon Nevada's Uniform Arbitration Act ("UAA"), N.R.S. 38.221 to support their respective positions. The UAA provides that "[o]n motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement: . . . (b) If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." N.R.S. 38.221(1)(b). Plaintiffs do not challenge jurisdiction under the UAA. Nevada law recognizes that "strong public policy favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation." *D.R. Horton v. Green*, 120 Nev. 549, 553 (2004).

During oral argument, counsel for Defendants argued that the Plaintiffs have the burden of establishing lack of capacity to contract, and have not met their burden. Counsel for Plaintiffs acknowledged that he bears the burden of proving lack of capacity, but argued he needed to take the deposition of the nurse from Life Care, and the nurse from MountainView Hospital who were present when the decedent executed the documents to litigate this issue. He pointed to the uncontroverted evidence in the record concerning the decedent's serious health conditions and medication to support Plaintiffs' claim the decedent's capacity to execute the arbitration agreement is seriously at issue.

## **ANALYSIS**

Under Nevada law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable. *D.R. Horton v. Green*, 120 Nev. 549, 553 (2004). "Generally, both procedural and substantive unconscionability must be present in order for a court to exercise its discretion and refuse to enforce a . . . clause as unconscionable." *Id*. (*quoting Burch v. District Court*, 118 Nev. 438, 442 (2002)).

///

In *D.R. Horton*, the Nevada Supreme Court relied on the Supreme Court of California's decision in *Armendariz v. Foundation Health Psychcare*, 6 P.3d 669 (Cal. 2000), in its approach to determining whether a contract is unenforceable due to unconscionability.  Relying on California law, the Nevada Supreme Court has adopted a sliding scale approach in determining unconscionability.  Although both procedural and substantive unconscionability must be present for a court to exercise its discretion to refuse to enforce an unconscionable contract, "they need not be present to the same degree." *Armendariz*, 6 P.3d at 990.  "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*. (*citing Armendariz*, 6 P.3d at 690). Additionally, under Nevada law, the party moving to enforce an arbitration agreement has the burden of persuading the court that the clause is valid.  *Id*. at 553 (*citing Obstetrics and Gynecologists v. Pepper*, 101 Nev. 105, 108 (1985)).

### 1. Procedural Unconscionability

The Nevada Supreme has held that "[a] clause is procedurally unconscionable when a party lacks a meaningful opportunity to agree to the clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract."

### 2. Substantive Unconscionability

Substantive unconscionability "focuses on the one-sidedness of the contract terms." *D.R. Horton* at 554 (*quoting Ting*, 319 F.3d at 1149), *cert denied*, 540 U.S. 811. The Nevada Supreme Court approved of the approach taken by the Ninth Circuit in *Ting*, applying California law in examining substantive unconsionability.  The Nevada Supreme Court agreed that an arbitration agreement is unconscionable if it lacks a "modicum of bilaterality."

Under the UAA, arbitration agreements are "valid, irrevocable, and unenforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." N.R.S. 38.035.  The court finds that lack of capacity to enter into a contract, and unconscionability are generally applicable contract defenses that render an agreement to arbitrate unenforceable.

///

It is uncontroverted that the decedent suffered from serious medical conditions and was taking a number of medications, including powerful pain medications and a sedative at the time she executed the agreement to arbitrate and other contract forms involving her admission to Life Care. Medical records submitted with the moving and responsive papers indicate the decedent was confused and disoriented before and after her admission to Life Care. Under these circumstances, the court will grant Plaintiffs' request to take the deposition of the nurse from Life Care who received the decedent's signature on the various forms, and the MountainView nurse who was present to develop the record on the decedent's capacity to contract. The court will require the parties to meet and confer to schedule these two depositions as expeditiously as possible and continue this case for further proceedings in approximately thirty days. At the continued hearing, the court will hear from the parties concerning the results of their deposition discovery concerning the decedent's capacity, and the parties proposal concerning how to proceed.

Having reviewed and considered the matter,

**IT IS ORDERED** that;

1. Defendants' Motion to Stay Proceedings and Compel Arbitration (Dkt. #16) is **DENIED without prejudice**.
2. Counsel for Plaintiffs request to depose the two nurses present at the time Plaintiffs' decedent executed the arbitration and other agreements is **GRANTED**. Counsel shall forthwith meet and confer to schedule these two depositions as expeditiously as possible.
3. A hearing is set for August 12, 2010 at 9:00 a.m. At the continued hearing, the court will hear from the parties concerning the results of their deposition discovery, and their proposals for how to proceed.

Dated this 13th day of July, 2010.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE